# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1491V
UNPUBLISHED

| | |
|---|---|
| FRANCINE RUSSO,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: August 31, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza<br>Vaccine; Shoulder Injury Related to<br>Vaccine Injury (SIRVA) |

*Joseph Alexander Vuckovich*, Maglio Christopher & Toale, P.A., Washington, D.C., for Petitioner.

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On October 28, 2020, Francine Russo filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on September 30, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Respondent conceded entitlement, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day"

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $63,000.00 for actual pain and suffering.[3]

## I.   Relevant Procedural History

Approximately 26 months after this case was initiated, Respondent filed his Rule 4(c) Report on February 14, 2022, conceding that Petitioner was entitled to compensation. ECF No. 27. A ruling on entitlement was issued on February 15, 2022. ECF No. 28. The parties subsequently attempted to settle damages but could not do so. ECF No. 30. Accordingly, they briefed the damages dispute. Petitioner filed a Motion for Ruling on the Record ("Mot.") on March 24, 2022. ECF No. 37. Respondent filed his response ("Resp.") on April 20, 2022 (ECF No. 38). Petitioner filed a reply ("Repl.") on May 5, 2022, with new medical literature relating to a side-issue relevant to severity of injury. ECF No. 39-40. Respondent filed a sur-reply ("Sur-Repl.") in reaction on August 15, 2022. ECF No. 43. I subsequently proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed damages issues. That hearing was held on August 26, 2022,[4] and the case is now ripe for a determination.

## II.   Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Ms. Russo received the flu vaccine in her left shoulder on September 30, 2018, at a Publix in Athens, Georgia. Ex. 1 at 5. She had no prior history of left shoulder pain or dysfunction. On October 15, 2018 (16 days after vaccination), Petitioner presented to her primary care provider with complaints of left shoulder pain since receiving the flu vaccine. Ex. 8 at 31. She rated her pain at 7/10 to 8/10. *Id.* She was advised to use warm compresses. *Id*. Twelve days later, Petitioner presented to urgent care reporting shoulder pain that had improved slightly, but was still present with motion. Ex. 12 at 20-21.  She was prescribed a course of prednisone. *Id.* at 21.

On November 5, 2018, Petitioner returned to her PCP with continued left shoulder pain that was only minimally improved with the prednisone. Ex. 8 at 34. An x-ray and

---

[3] Petitioner made no claim for any other damages component, like lost wages or unreimbursed expenses.

[4] At the end of the August 26th hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

ultrasound were ordered and were normal. Ex. 8 at 56-57. Petitioner was referred to physical therapy. Ex. 8 at 35.

Petitioner underwent an initial physical therapy evaluation on November 20, 2018, reporting discomfort, but not pain, in her left shoulder. Ex. 6 at 193. Her range of motion was within functional limits, but she had pain during abduction and passive movement. *Id.* at 194. She completed nine sessions of PT before being discharged on December 21, 2018. Ex. 6 at 270.

On January 14, 2019, Petitioner presented to her PCP to follow-up on her left shoulder pain. Ex. 8 at 37. Petitioner reported that physical therapy had helped and that she was not in pain at the appointment. *Id.* She was advised to treat with over-the-counter medications. *Id.*

Almost four months later, on May 6, 2019, Petitioner returned to her PCP complaining of "bothersome" left shoulder pain which she rated at 6/10. Ex. 8 at 40. She was referred for a second course of physical therapy. *Id.* On May 10, 2019, Petitioner had a physical therapy evaluation and attended a total of three sessions through May 20, 2019. Ex. 6 at 284, 302.

Although Petitioner states that, as of two years after her vaccination, "she had still not returned to the level of physical activity that she enjoyed prior, Petitioner had no further treatment for her SIRVA injury after May 20, 2019. Ex. 16 at ¶10.

### III. The Parties' Arguments

#### a. Petitioner

Ms. Russo seeks an award of $100,000.00 as compensation for her pain and suffering. Mot. at 6. To support her pain and suffering request, Petitioner emphasized that her pain was severe and caused significant sleep disturbances, which "made it harder for her to function and had a negative impact on her quality of life." *Id*. at 2. She further explained that her pain and reduced range of motion forced her to stop attending fitness classes (giving up her membership at the YMCA) and caused difficulty with completing daily personal care and household chores. Ex. 16 at ¶7. Petitioner argues that these difficulties caused her "significant emotional distress." *Id*. at ¶8.

In her Reply, Petitioner raised issues pertaining to the nature of a specific aspect of her treatment. She argued that the two dexamethasone patches she received (which administered the drug via a process known as "iontophoresis") during physical therapy

should be considered as "functionally equivalent" to cortisone injections when evaluating the severity of a petitioner's pain and suffering. Repl. at 5-6. She argues that wearing the dexamethasone patch was inconvenient and stressful, and that she had to cease treatment due to lip tingling caused by the medication. *Id.* at 6. Petitioner provided medical literature to support her argument. ECF No. 39.

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns, and thus argued that an award of $100,000.00 was reasonable and appropriate given that her circumstances were comparable. Br. at 3-6.

### b. Respondent

Respondent maintains that a pain and suffering award of $50,500.00 is appropriate because of the overall course of Ms. Russo's injury. Opp. at 5. Respondent argued that Petitioner's medical records reflect that she sustained a "mild and limited" SIRVA injury. *Id*. at 5-6. Her treatment consisted of treatment by her PCP, one prescription medication, one x-ray and one ultrasound, and 12 physical therapy sessions. *Id.* at 5-6. Respondent further argued that there was a four-month gap in treatment, and that treatment ended after only eight months. *Id*. at 6.

In his sur-reply, Respondent disputed Petitioner's argument that the iontophoresis treatments should be considered equivalent to cortisone injections in the context of determining her pain and suffering. Sur-Repl. at 2-4. Respondent disputed that Petitioner's medical literature applies to SIRVA injuries and, even if it did, that Petitioner's course of iontophoresis treatment was not comparable to that in the study cited. *Id*. at 2-3. Respondent provided medical literature with his sur-reply. ECF No. 43, Ex. A.

Respondent also argued that Petitioner's cited prior SIRVA cases are "factually distinguishable in important ways," particularly in that Petitioner's treatment course was less aggressive and shorter than the petitioners in the cited cases. Resp. at 6-8. Respondent also noted that Petitioner's cited cases were older, from 2018 and 2019, "before the Program had generated a broad base of SIRVA damages decisions." *Id*. at 8. Respondent cited four prior SIRVA cases, from 2020 and 2021, with similar treatment courses to Petitioner's in support of his proposed pain and suffering award. *Id*. at 8-10.

At the hearing, Respondent maintained that because Ms. Russo had a conservative course of treatment and a four-month treatment gap, her award should be significantly lower than the prior SIRVA cases cited by Petitioner.

4

## IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V.  Appropriate Compensation in this SIRVA Case

#### a.  Awareness of Suffering

Neither party disputes that that Ms. Russo had full awareness of her suffering and I find that fact is supported by the record evidence.

#### b.  Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Russo's medical records and affidavits provide a description of the pain she experienced throughout the duration of her injury. As noted, Ms. Russo reported significant pain, rated 7/10 to 8/10 at the beginning of her SIRA injury. Ex. 8 at 31. Her pain was significant enough for her to seek treatment at urgent care, where she was prescribed a course of prednisone. Ex. 12 at 20. However, her total treatment course consisted of four visits to her PCP, one urgent care visit, an x-ray and ultrasound (which were normal), one prescription medication, and two relatively short courses of physical therapy (12 sessions total), during which she received two iontophoresis treatments. Ms. Russo did not seek treatment from an orthopedic specialist, she did not have an MRI or a cortisone injection, and no physician recommended surgery.

Petitioner argues that her iontophoresis treatments should be considered the functional equivalent to cortisone injections, which are regularly considered as evidence of a petitioner's degree of suffering from pain. While both parties made arguments and submitted medical literature on the topic, this issue was not fully litigated in this case. However, Petitioner's treatment with iontophoresis is evidence that her treating provider – a physical therapist – believed her pain significant enough to require treatment with additional steroid medication, and Petitioner otherwise made persuasive points about how this kind of treatment is comparable to a cortisone injection, even if by design iontophoresis is a bit less intrusive.

Another factor to consider in awarding an amount for pain and suffering is the loss of enjoyment of daily life activities. Ms. Russo highlighted the fact that her SIRVA injury disrupted her life, most prominently her sleep. She further expressed distress at the limitations she had with household and recreational activities, including fitness classes she routinely took at the YMCA, due to pain and reduced range of motion. While these are not insignificant considerations, I note that Ms. Russo stopped seeking treatment for her SIRVA within eight months of vaccination.

Although both parties cited to prior SIRVA cases in support of their proposed awards that were reasonably comparable, I believe this case is most similar to *Roth v.*

*Sec'y of Health & Human Servs.,* No. 19-0944, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. August 31, 2021). The *Roth* petitioner had a course of treatment very similar to Ms. Russo's – treatment by her PCP, one x-ray, 21 physical therapy sessions, and a cessation of treatment approximately eight months after vaccination. *Id.* at 1-2. In determining Ms. Roth's pain and suffering award in that case, I noted that she did not "seek treatment from an orthopedist, an MRI was never obtained, no cortisone injection was given, and no surgery was recommended." *Id.* at 3. The *Roth* petitioner was similarly impacted in her recreational activities during her treatment, and was awarded $58,000.00 in pain and suffering. *Id.* at 4. The only material differences between that treatment course and Ms. Russo's were that Ms. Russo was prescribed medications for pain, while the *Roth* petitioner attended more physical therapy sessions (21 vs. 12). Overall, Ms. Russo had a very similar injury course, but I will award an additional amount to account for Ms. Russo's complaints of continued limitations beyond her treatment.

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$63,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

## VI.     CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $63,000.000 for her actual pain and suffering in the form of a check payable to Petitioner, <u>Francine Russo</u>**. This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.